```
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


Michael Askenaizer, Esq. as
Trustee for the Chapter 7
Debtor BeaconVision, Inc.

     v.                               Civil No. 09-cv-63-JD
                                      Opinion No. 2009 DNH 073
Victoria Moate, d/b/a New
Century Title Abstract, et al.
```

                                O R D E R


    Michael Askenaizer, Trustee of the debtor, BeaconVision, Inc., appeals the decision of the United States Bankruptcy Court for the District of New Hampshire (Vaughn, C.J.) denying its claims of negligence and conversion in an adversary proceeding against Victoria and Stanley Moate, d/b/a New Century Title Abstract (collectively, "New Century").  The decision of the bankruptcy court is affirmed.


I.    Standard of Review

    This court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court under 28 U.S.C. § 158(a) (2006).  See also L.R. 77.4(c) (2009).  The court conducts a de novo review of the legal determinations of the bankruptcy court, In re Gonic Realty Trust, 909 F.2d 624, 626-27 (1st Cir. 1990), but will not reverse the bankruptcy court's

factual findings unless clearly erroneous, <u>Briden v. Foley</u>, 776 F.2d 379, 381 (1st Cir. 1985).  A factual finding "is clearly erroneous when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 573 (1985) (internal quotation marks omitted).

II.  <u>Background</u>

In 2003, the debtor, BeaconVision, entered into an agreement with Weller Financial Resources, Inc. ("Weller") to obtain a $2 million loan.  Michael Wyatt, Weller's president at that time, engaged in discussions with BeaconVision concerning the loan.  Sometime before April 14, 2003, Weller and the president of BeaconVision executed an agreement detailing the terms and conditions of the proposed $2 million loan.[1]  As part of the agreement, Weller required that BeaconVision deposit $200,000 into an account provided by New Century.  Weller claimed that the

---

[1]The terms of the agreement were allegedly set forth in an April 10, 2003, Loan Commitment Letter, which was submitted as an exhibit to the bankruptcy court.  The authenticity of this document was disputed at the hearing.  The bankruptcy court ultimately found that aside from this letter, the evidence supported a finding of an agreement between Weller and BeaconVision.  This finding is not disputed on appeal.

$200,000 was necessary to obtain an insurance binder for the loan.

On April 14, 2003, BeaconVision deposited $200,000 into an account at New Century. On April 15, 2003, BeaconVision and New Century signed the "Lender's Escrow Instructions," a pre-typed form provided by Weller which listed various terms and conditions regarding the $200,000 deposit and the $2 million loan.

The escrow instructions, which were signed by Victoria Moate and by a representative of BeaconVision, provided, in part:

> <u>Important Instructions to Settlement/Escrow Agent</u>
>
> . . . . As a Settlement Agent you are financially liable for any loss resulting from your failure to strictly follow these instructions.
>
> Pursuant to these Settlement/Escrow Instructions, you, as Settlement Agent, are the Lender's agent for the limited purpose of carrying out these instructions, and for no other purpose.
>
> Do not disburse funds from the borrower on this Credit Line unless ALL conditions in these escrow instructions and any supplemental settlement instructions have been satisfied. . . .
>
> You must follow these instructions exactly. Failure to comply with these instructions may delay funding or subject you to financial liability. These instructions can only be modified with the advanced written approval of Weller Financial Resources, Inc.

. . . .

B.   Funds are not to be disbursed for any reason prior to receipt of Insurance Binder issued by an "A" rated or better Insurance Company for an amount not less than $2,000,000.00 USD.

C.   If for any reason the Insurance Binder is not issued the Escrow Agent is instructed to immediately return 100 percent of the funds received back to the originated party exactly as it was issued (via wire) within 72 business hours of receipt of funds.

D.   If you become aware, or suspect, that any party to the subject transaction has provided false or incomplete information or documentation to the Lender, or has concealed relevant information from the Lender, you must contact Lender with the full particulars of the relevant situation and obtain written approval from Lender to proceed with the settlement of the subject transaction.  If you are aware of relationships undisclosed to Weller Financial Resources, Inc. between any parties in the loan transaction, you must immediately contact Weller Financial Resources, Inc.

. . . .

G.   You are further instructed to disburse the $2,000,000.00 loan funds upon the 30th banking day after issuance of Insurance Binder unless given instructions to release earlier by Lender.  In accordance with attached loan commitment letter of April 10, 2003.

. . . .

. . . . You must promptly return any amounts advanced by the Borrowers if the line does not close within 30 banking days after receipt of Insurance Binder.

Wyatt also sent Victoria Moate an addendum to the escrow instructions on April 16, consisting of a payee list with instructions to "wire the funds [$200,000]" to three identified parties. The payee list did not contain a signature or authorization from BeaconVision. Victoria testified that Wyatt also called her on that date and told her he had received the insurance binder. Pursuant to Wyatt's written instructions, Moate disbursed $25,000 to Weller, and $175,000 to two other parties unrelated and unknown to BeaconVision. Victoria signed the payee list on April 16 and sent a copy to Wyatt indicating that she had disbursed the funds.[2] In fact, Wyatt had not received an insurance binder. New Century never received the $2 million loan funds from Weller and the loan was never disbursed to BeaconVision. The $200,000 was never returned to BeaconVision.

BeaconVision filed for chapter 7 bankruptcy on February 19, 2004. On May 24, 2005, the Trustee commenced an adversary proceeding against several parties, including New Century, to avoid the transfer of the $200,000 deposit.[3] The Trustee asserted claims of conversion and negligence against New Century.

---

[2] The parties dispute whether Victoria also sent a copy to BeaconVision.

[3] The Trustee also brought claims against Wyatt and Weller, among others.

5

In February of 2007, New Century filed a motion requesting judgment as a matter of law dismissing all claims against it. See Fed. R. Civ. P. 52(c).[4]  The bankruptcy court held a three-day hearing ending on February 26, 2007.  On January 20, 2009, the court issued an opinion and final judgment denying the Trustee's claims against New Century and granting New Century's Rule 52(c) motion for judgment as a matter of law.[5]

III. Analysis

The Trustee argues that the bankruptcy court erred in granting New Century's Rule 52(c) motion on the conversion and negligence claims.

---

[4] Rule 52(c) provides:  "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgement until the close of evidence.  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."

[5] The court granted the Trustee's claims for breach of contract and conversion under New Hampshire law, and avoidance under 11 U.S.C. §§ 548 and 550, against Weller and ordered judgment in the amount of $200,000.  In 2008, Wyatt, Weller's president, was convicted of conspiracy to commit wire fraud and is currently serving a prison sentence.  See United States v. Wyatt, 561 F.3d 49 (1st Cir. 2009).

### A. Negligence

The Trustee argues that New Century was an escrow agent that breached the duty of care it owed to BeaconVision when it released the $200,000 before receiving the insurance binder and the $2 million loan from Weller. The Trustee further argues that the bankruptcy court erred in finding that Weller could unilaterally change the escrow instructions. New Century argues that it was not an escrow agent, that it was legally obligated to follow Weller's instructions, and that it acted reasonably under the circumstances, thereby fulfilling any duty of care it may have owed to BeaconVision. New Century further argues that the Trustee was required to produce expert testimony at trial to prove a breach of the duty of care and that the fraud committed by Weller constituted a superseding cause. The bankruptcy court concluded that New Century was Weller's agent, that New Century's obligations under the escrow instructions could be modified by Weller, and that New Century did not breach any duty of care it may have owed to BeaconVision. In re BeaconVision, No. 04-10528, 2009 WL 151594 at *1, 8 (Bkrtcy. D.N.H. Jan. 20, 2009). The court agrees.

To prevail on its negligence claim, the Trustee must show that: (1) New Century owed BeaconVision a duty; (2) New Century breached this duty; and (3) the breach proximately caused BeaconVision's injuries. Vandemark v. McDonald's Corp., 153 N.H.

7

753, 756 (2006). "Whether a defendant owes a duty is a question of law." Maloney v. Badman, 938 A.2d 883, 886 (N.H. 2007). "The scope of the duty of care imposed upon the defendants, however, is limited by what risks, if any, are reasonably foreseeable." Macie v. Helms, 156 N.H. 222, 224 (2007).

The Trustee argues that the duty of care which New Century owed to BeaconVision is that which an escrow agent owes to the depositor. There are few New Hampshire cases interpreting escrow agreements. The court looks to other jurisdictions for guidance.

"An escrow agreement consists of the delivery of money or other valuable object by one party and a promise by the other to hold it until the performance of a condition or the happening of a certain event." In re Hilson, 863 N.E.2d 483, 492 (Mass. 2007). The intention of the parties at the time of the deposit determines the type of agreement created. Id. As a general rule, "an instrument cannot be deposited as an escrow with the agent" of one of the parties. McCabe v. Hartford Accident & Indemnity Co., 4 A.2d 661, 664-65 (N.H. 1939). This rule does not apply "if the agent's relation to his principal is such that his acting as custodian of the [escrow] involves no violation of his duty to the [depositor]." Id. at 665.

The escrow instructions are clear on their face that New Century was acting solely as Weller's agent and not as a neutral third party. The instructions state that, "[New Century], as

Settlement Agent, [is] the Lender's agent for the limited purpose of carrying out these instructions, and for no other purpose." Further, the terms of the escrow instructions were for the benefit of Weller in that they obligated New Century to inform Weller if it became aware that any party had provided "false or incomplete information" to Weller or if there were "relationships undisclosed to Weller." The instructions did not contain similar protective provisions for BeaconVision. Cf. Rogan v. Patterson, 668 S.E.2d 459, 460 (Ga.App. 2008) ("[The] loan agreement provided for the disbursement of funds by the lender or its agent subject to conditions imposed solely for the benefit of the lender . . . [t]here is no language whatsoever in the agreement that is legally sufficient to establish an escrow agency . . . ."). Weller also prepared the lender's escrow instructions, which were signed only by New Century and BeaconVision, and which gave an explicit directive to New Century to follow Weller's instructions. New Century was, therefore, not acting as an escrow agent, and any duty of care which New Century owed to BeaconVision is not based on the duty of care which an escrow agent owes to the depositor of an escrow.

    The Trustee further argues that the signed escrow instructions created a special relationship between BeaconVision and New Century, giving rise to a duty of care which New Century breached when it failed to comply with the terms of the escrow

instructions.  The bankruptcy court found that any such duty which may have required New Century not to release the $200,000 until certain conditions were met "changed and became redefined by Weller's disbursement instructions."  In re BeaconVision, 2009 WL 151594 at *8.

Under New Hampshire law "[a] breach of contract standing alone does not give rise to a tort action; however, if the facts constituting the breach of the contract also constitute a breach of duty owed by the defendant to the plaintiff independent of the contract, a separate tort claim will lie."  Bennett v. ITT Hartford Group, 150 N.H. 753, 757 (2004).  "Thus, where improper conduct in the performance of a contract is alleged, it is necessary to identify whether the plaintiff has an interest protected by tort law or one enforceable only in contract."  Ellis v. Robert C. Morris, Inc., 128 N.H. 358, 363 (1986), overruled on other grounds by Lempke v. Dagenais, 130 N.H. 782 (1988); Wong v. Ekberg, 148 N.H. 369, 375 (2002) ("Unless the contract involves a fiduciary duty on the part of one of the contracting parties or the facts constituting the breach of a contract also constitute a breach of a duty owed by the defendant to the plaintiff independent of the contract, we have held that a claim for the negligent performance of a contract cannot stand.").

The Trustee cites to Robinson v. Colebrook Guaranty Savings Bank, 109 N.H. 382 (1969) and argues that an independent tort duty existed.  Robinson provides, in relevant part:

> The duty to use due care in rendering a service arises, not from a right to receive the service, but from the relation between the parties which the service makes.  Thus, a relation created by contract may impose a duty to exercise care.  In general, the scope of such a duty is limited to those in privity of contract with each other.  However, considerations of public policy have prompted the recognition of exceptions to this rule, as where . . . the risk to persons not in privity is apparent.

109 N.H. at 384-85 (internal citations and quotation marks omitted).  In such cases, the "transaction . . . involved [may give] rise to [such] a relationship between the defendant and the plaintiff, [that calls] for the exercise of care by the defendant to prevent" injury to the plaintiff.  Id. at 385.  Where a duty arises, the defendant must exercise ordinary care by taking "reasonable measures to avoid" injury to the plaintiff.  Id.  Failure to take reasonable measures constitutes a breach of the defendant's duty of care owed to the plaintiff.  Id.

As the bankruptcy court recognized, even assuming a special relationship existed between New Century and BeaconVision giving rise to a duty of care to act reasonably, New Century complied with that duty.  The escrow instructions provided that the $200,000 was "not to be disbursed for any reason prior to receipt

11

of Insurance Binder issued by an "A" rated or better Insurance Company for an amount not less than $2,000,000.00 USD."  The escrow instructions do not require that New Century actually have physical possession of the insurance binder.  The instructions specify only that there must be "receipt" of the insurance binder, it does not specify receipt by whom.  Further, there was no reason for Victoria Moate to believe at that time that Weller was engaging in illegal conduct, or that he was lying when he said he received the insurance binder.  Accordingly, New Century complied with the instruction not to disburse the $200,000 until an insurance binder was received because it understood, and that understanding was reasonable, that the binder had been received.

     The Trustee further argues that the escrow instructions also required that New Century have possession of the $2 million loan before disbursing the $200,000 and that it was therefore unreasonable for New Century to disburse the $200,000 before this condition was satisfied.  The court notes that the escrow instructions do not expressly provide that the loan proceeds be in the possession of New Century before the $200,000 could be disbursed.  However, even if such a requirement could be read into the escrow instructions, the instructions explicitly gave Weller the authority to alter its terms:  "These instructions can only be modified with the advanced written approval of Weller Financial Resources, Inc."  Therefore, when Weller instructed New

Century to disburse the $200,000, New Century acted reasonably when it complied with Weller's disbursement instructions in light of the express terms of the escrow instructions.

The court affirms the bankruptcy court's conclusion that New Century did not breach any duty of care owed to BeaconVision. Therefore, it is not necessary to address New Century's additional arguments that expert testimony was necessary to establish breach or that Weller's fraud constituted a superceding cause thereby precluding a finding that New Century is liable for BeaconVision's loss.

### B.  Theft by Conversion

The Trustee argues that New Century's disbursement of the $200,000 wrongfully deprived BeaconVision of its property. New Century argues that it did not intentionally deprive BeaconVision of its property and that it acted in good faith. The bankruptcy court found that the Trustee failed to prove conversion because New Century acted in good faith and did not exercise the requisite dominion and control over the $200,000.

In New Hampshire, an action for conversion arises from the defendant's intentional exercise of unauthorized dominion or control over the plaintiff's property that seriously interferes with the plaintiff's right to the property. Rinden v. Hicks, 119 N.H. 811, 813 (1979); accord Marcucci v. Hardy, 65 F.3d 986, 991

13

(1st Cir. 1995). In resolving this question, the following factors are considered: "the extent and duration of the actor's exercise of dominion and control, his intent to assert a right in fact inconsistent with the other's right of control, and his good faith."[6] Muzzy v. Rockingham County Trust Co., 113 N.H. 520, 523 (1973) (citing Restatement Second of Torts §222A(2)); Lane v. Camire, 126 N.H. 344, 345 (1985) (recognizing trial court's finding, in conversion claim, of "no bad faith on the part of the defendant"); Kingston 1686 House v. B.S.P. Transp., 121 N.H. 93, 95 (1981).

The bankruptcy court found that New Century acted in good faith. The Trustee fails to address this finding in its brief. The court, therefore, accepts the bankruptcy court's finding that New Century acted in good faith. Further, New Century did not have dominion and control over the $200,000. Weller was the entity that exercised dominion and control over the funds when it instructed New Century to disburse the funds to itself and other third parties. New Century, therefore, cannot be held liable for conversion.

---

[6]Earlier New Hampshire cases held that the defendant's good faith does not preclude a finding of conversion. See Pacific & Atl. Shippers v. Schier, 109 N.H. 551, 553 (1969). The court follows the most recent conversion cases which include good faith as a relevant factor.

## Conclusion

For the foregoing reasons, the bankruptcy court's decision of January 20, 2009, is affirmed.

SO ORDERED.

                              _/s/ Joseph A. DiClerico, Jr._
                              Joseph A. DiClerico, Jr.
                              United States District Judge

June 4, 2009

cc: Michael S. Askenaizer, Esquire
    Geraldine L. Karonis, Esquire
    J. Daniel Marr, Esquire
    Steven M. Notinger, Esquire
    Michael C. Palermo, Esquire
    Mark W. Shaughnessy, Esquire